You may proceed. Good morning, Your Honors. May it please the Court. My name is Tino Do and I represent Plaintiff Pellant's Pension Plan for the Pension Trust Fund for Operating Engineers. I'd like to reserve three minutes for rebuttal. We're here because the District Court in the underlying case granted Plaintiff Eleanor Plant's motion for summary judgment. The central issue in this appeal is whether the District Court abused its discretion in finding that copies of tax returns submitted by plaintiffs in opposition to that summary judgment motion were not admissible and therefore not sufficient to create a tribal issue of material fact. Under Ninth Circuit law, the District Court abuses its discretion when it makes an error of law or makes findings of fact that are illogical, implausible, or without support. In this case, the District Court made legal and factual errors with its summary judgment ruling. The Pension Plan is a multi-employer benefit plan. What do you think the errors were? Let's just jump straight to that. Let's jump straight to that. In the summary judgment ruling, the District Court found that those tax returns of Kino Aggregates, Inc. were inadmissible. But they were unsigned. Yes, they were unsigned. They do not have a handwritten signature, correct. But that is unsupported by the record in that the person who actually prepared those tax returns, Norman Newell, the principal of Kino Aggregates accounting firm, Smith and Newell, directly testified that he prepared those tax returns. He authenticated that the copies produced by Smith and Newell in discovery were the documents that he submitted to the IRS. And he also testified that those tax returns were electronically filed by his company, Smith and Newell, on behalf of Kino Aggregates. But for that to matter, you need him to have been an agent of Eleanor, right? For it to be admissible as to Eleanor? No, Your Honor. Under federal rules of evidence 801D2D, an out-of-court statement by a party's agent or employee on a matter within the scope of representation of that scope of relationship and also during that existence of relationship qualifies for the hearsay. Okay, that's what I just said, though. You just said he needs to be an agent or an employee, but of Eleanor. So Mr. Newell was an agent of Kino Aggregates, Inc. That's not in dispute. Eleanor Plant and her husband, Noble Plant, were the owners of the plant. Well, that's the question, not the answer, right? That's what you're trying to prove. So we need to figure out if we can prove that. And so you can get it admissible as to Kino because he's Kino's agent. But the question is, how do you get it admissible as to Eleanor? Or is there other evidence of Eleanor being the owner other than this tax return that you can use? So there's other evidence in that the Eleanor Plant in her own briefing admits that at a minimum she owned 60%, between her and Noble Plant, that they owned at least 60% of Kino. But that's not enough to make him the agent of her, is it? What says owning with a husband up to 60% means that you're equivalent to the company? I think that's the problem is it doesn't, right? So I think the situation is under ERISA rules with attribution between spouses, that we're looking at the 80% qualification, the ownership level, the ownership of both the husband and wife are combined.  So that only gets you to 60, though. So why does that make him her agent? Well, again, the accountant is the agent of Kino. Kino was run by Noble Plant. But that's the question. First of all, it's a very frustrating case. The tax return says that they were the 100% owners. No, they were 90% owners. 90% owners. That's what it says, 90% owners. I thought it said 100%. The tax return. I think it says 90%. The tax return that was introduced, it said 90%? So there's tax returns from the years 2008 through 2015, and they all say 90% between the spouses.  But whatever, it's good enough, just the two of them. But even against Kino, it can be introduced only if it's, for hearsay purposes, if it's being introduced against a party, right? Yes. And for current purposes, Kino was not a party. Well, Kino was a party. It was a party, but for current purposes, in terms of reaching Eleanor, it's not. It has to be Eleanor's agent. It has to be Eleanor's agent. And again, the record shows that both Eleanor and her husband, Noble, ran the company. Noble was the president. Eleanor was treasurer, chief financial officer. Because that was their titles. That's why you say they ran the company. That was their titles. They were paid as officers. So you're saying, are you saying, because I don't remember seeing this in your brief, that essentially because that was her title and because this was the accountant for the company, it's a fair inference that he was her agent? Is that what you're saying? That's what we're saying in that we're also relying on Greenbaum v. U.S. On what? I'm sorry? Greenbaum v. U.S. Which is what? It's the case cited within the both parties' briefing regarding the application of the admission against interest hearsay exception when it comes to a company. And in Greenbaum, it discusses the requirements for the application of that admission against interest with regards to tax returns. I think Greenbaum doesn't help you out of the agent problem, though, right? You need to show that this tax preparer was an agent of Eleanor. And it seems like you're now saying because Eleanor was a high-up executive, that's good enough. Do you have a case that says that? Again, it's not simply just that she's a high executive, that she was at least a minimum 60% owner that Mr. Newell, the accountant, testified that he worked with Noble and Eleanor in preparing these tax returns. Right. I mean, the problem I think you have is that the third restatement of agency and other doctrines talk about how you can have co-agents. So someone can work for the company, oversee a contractor. They can both be agents of the company, co-agents of the company, even though she's overseeing him. It doesn't make her the company just because she works for the company or even owns part of the company unless there's some case. I mean, it seems like the restatement doesn't treat someone who's at the company overseeing the contractor as the company itself. So I'm not sure how you get out of this unless you can point us to something that says we have to treat Eleanor as the company. So I would just refer back to the record that shows the level of involvement both Noble and Eleanor had with Kino that they essentially did right. Well, her total – what it shows is she was on the papers of the company, the – what, CFO or something she was? CFO and treasurer. All right, and that she had something to do with the putting together of these tax returns. Is that it? That, again, that she had a minimum 60 percent ownership with her husband.  That they basically ran the company for the times during the – Well, they basically ran the company. You're relying only on her title. Anything else? Again, I think it's the totality of the record that shows that Eleanor and Noble – and you have to take both of their actions in together. She says she had nothing to do with it. So where are you getting the – that she basically ran the company other than that she was the official CFO of the company and that she had something to do with this tax return? So under ERISA attribution-wise, again, we're looking at both the spouses as a couple. Why don't you answer the question? What in the record shows that she was basically running the company? So we've never said that Eleanor ran the company. We said that her husband, Noble, ran the company and that she, again, as you said, was a high-level executive as treasurer and chief financial officer. Can you go to your second argument about there still being tribal issues of fact here that address the issue of ownership and that that's the reason – that's the error that we should consider and then send back? Could you address that? So, again, with ownership, the issue of ownership of Keno is whether there's the 80 percent level. The Eleanor plant has admitted at a minimum that between her and her husband in these tax years that they owned at least 60 percent. And the question is whether these tax returns of Keno aggregates that are the only evidence out there – the pension plan requested any kind of ownership documentation from Eleanor during discovery. Eleanor stated that she didn't have any, so nothing was produced. That's why we had to go directly to Keno's accountant. And why didn't you move to compel? Did anything stop you from moving to compel against Eleanor for more documents? Other than her just flat denial that she didn't have anything, a motion to compel would simply just take – would just result in more denials. And you haven't mentioned Deborah's statement, the daughter. Is there a reason why you haven't mentioned it? Well, Deborah Plant, the daughter, at a minimum, at most, owned 10 percent of Keno aggregates. Her statement simply was that I think her parents took away that 10 percent ownership at one point, but that they had the sole control over any records – I thought her statement said that the parents owned 100 percent. I think her statement was the parents had promised her 10 percent of the ownership of the company, but never actually prepared the paperwork or gave her paperwork that showed that – I'm looking at ER 325. My parents effectively and with purpose took and have 100 percent possession of Keno. It sounds like you don't want to use that statement. Well, I mean, I would love to use that statement. The problem is it's a letter to the court, and the court did not seem receptive to accepting a letter because we were unable to depose Deborah Plant during discovery due to various medical conditions, and she declined to make herself – Do you think she would be available to testify at trial? My understanding is she would be available to testify at trial. Well, that's the record, that she would be, is what I understood, correct? Correct. Okay. Maybe you want to save the rest of your time for rebuttal? Yes, Your Honor. Good morning, Your Honor. Could you not go to the tax issue? Could you go to this last point? Are there triable issues of fact here that should have – that make this inappropriate for summary judgment? Your Honor, after two years of discovery, the only evidence offered in opposition to summary judgment by pension plan was the tax returns. He also offered the daughter's letter, right? The daughter's letter was an unsworn letter to the court. It wasn't under oath or in any other way really to the heart of the issue in this case. She owned 10 percent of Keno at most. According to the capitalization summary that Mr. Newell testified at his deposition, he relied on in preparing these tax returns. Deborah owned 10 percent of Keno. Mr. Candelario Vargas owned 30 percent of Keno. Well, he obviously didn't rely on them because he doesn't have any – he has the plans owning 90 percent. Your Honor, she would testify – she could testify at trial. She would be available. She would testify she owned at most 10 percent of Keno. Mr. Vargas would also be available. But her statement also says her parents owned 100 percent. The tax returns say that Noble and Eleanor Plant owned 90 percent of Keno. Right, and they say she has 10 percent, and she says she doesn't have 10 percent because they never gave her any stock and they cut her out of it. Right, and she would testify to that, but that is the other 10 percent according to the tax returns that is – that counts for 100 percent. Candelario Vargas would also testify at trial. He would testify he had 30 percent of Keno. Well, his statement is kind of woolly in terms of what he said. Granted, Your Honor, but his statement is corroborated by the capitalization summary, which Mr. Newell relied upon in preparing the tax returns. Yes, but he was obviously gone by 2007 or so, right? Was, but there's no evidence in the record that he ever sold or otherwise disposed of his 30 percent interest in Keno. He never had them, physically had them, anything. And isn't that the problem here? That we have all these issues still out there having, you know, evidence, one person saying one thing, another person saying another thing, and the issue is why is this appropriate for summary judgment? It's appropriate for summary judgment because the only evidence offered by pension plan in opposition to summary judgment were the tax returns prepared by Mr. Newell. Okay. I'd like to go back to this, though, because I think I asked you, didn't they also give Deborah's statement as part of the evidence in opposition to summary judgment? Yes, but she only, she claimed she only had 10 percent. And on ER-325, she says my parents owned 100 percent. Why is that statement not enough to create a genuine issue of fact? It's not enough to create an issue of fact here because without the tax return excerpts, if you only have her statement, and let's assume she makes testimony at trial that her parents had 100 percent, then what we'll have is, at trial, we'll have the evidence from Mr. Newell's tax return excerpts, which would not be admissible. So the only thing we'll have in the record to go to trial would be Condelario Vargas' testimony and Deborah Plant's testimony, Mr. Guth's testimony. Mr. Guth was deposed regarding the estate plan he prepared for the Plants. And in that, in the estate plan documents in 2008, the Plants told Mr. Guth, and it's reflected in the estate plan, that they only had 70 percent. Okay, so someone would say they had 70, someone would say they had 60, and someone would say they had 100, and the jury would choose who they believed most. Why isn't that a fact dispute? Well, I think the court in this case said that they're just, this is the kind of case where the district court has to test the evidence to see if a trial is really necessary. And in this case, if we went to trial, the tax returns would be inadmissible, and all we would have is the testimony of Deborah, Guth, and Mr. Vargas. In terms of tax returns being inadmissible, why, I mean, Mr. Newell, was that his name, the accountant? Mr. Newell? Yeah. I mean, he seemed to remember nothing. But the one thing he did remember is that Eleanor had a role in preparing this tax return. Well, what he remembered exactly, according to his testimony, Your Honor, is that he did deal with Eleanor and Noble Plant at some point in preparing these eight years of tax returns. Right. But Mr. Newell added he didn't ever recall receiving any information about the ownership of Keno from Eleanor or Noble. He didn't ever recall that Eleanor reviewed or approved these tax returns for submission to the IRS. And therefore, he couldn't really say, he couldn't even remember the last time he talked to her or what he talked to her about. So Mr. Newell's testimony regarding Eleanor's part in this is very vague, very general, not specific. And those tax returns, I mean, to get back to the tax returns for just a second, one reason that we haven't discussed why they cannot qualify for the Statement Against Interest Exception is because in order to qualify for a Statement Against Interest Exception, the declarant has to have made a statement that, at the time it was made, was contrary to that declarant's interests. The assessment for withdrawal liability here was not made until 2021. These tax returns were made in 2008 to 2015. So let's just assume you're right, that the tax returns are not admissible. They're not. I'm still not understanding why we don't have a fact dispute that requires trial when we've got the daughter, we've got this guy who may or may not have had 30 percent, and maybe someone else, and they all have different stories, and the jury decides between them. Isn't that exactly what juries do? In effect, Your Honor, Deborah's testimony that she had 10 percent is really wrong. No, I want to talk about her testimony that her parents had 100 percent. Oh, her testimony that the parents owned 100 percent, assuming she would testify to that, because nothing in the record on summary judgment was a sworn statement by Deborah. Okay, we have a letter she wrote to the court. So is your argument that we should have to ignore it because it wasn't a sworn statement? The court didn't consider the evidence, Your Honor, from Deborah Plante, because it wasn't evidence. It wasn't in evidence. It was an unsworn letter she wrote. Okay, so the question is, is that correct? Because we are de novo reviewing summary judgment, and there's a case called Frazier about diaries that says they can be admissible to create a fact dispute at summary judgment even if the person could testify at trial, which it seems like you think Deborah could. So why aren't we under Frazier? Why isn't this letter enough to get past summary judgment? Because at trial, Deborah would say exactly what this letter says, that my parents owned 100 percent. Well, because all of the other evidence in the record refutes the allegation that she — Well, that's up for the jury, isn't it? That's up for the jury. But the court in this case looked at the records. Yes, but we are de novo, so it doesn't matter what the district court did. Maybe the district court made a mistake. That's why we have appeals. So here we are. We're looking at the summary judgment record. We're trying to figure out, is there a fact dispute that needs to go to trial? We've got the letter. It was offered at summary judgment. It's not signed, but we have the case Frazier. Tell us why you think we don't have enough in this record that if we start from scratch and look at it requires a trial. The court clearly felt, and I think this Court should also see, that in the context of this — of all the evidence here in this record, we have Deborah making an allegation the parents owned 100 percent. She doesn't point to any documents. She doesn't — you know, she doesn't do anything but offer this opinion, unsworn opinion. Yes, she could testify to that at trial. But it would be futile to say — Well, and could she? I mean, one problem here is it would be a question of how she even knew that. Right. And the district court had no basis to really evaluate whether this evidence would be enough to reach a jury. Because remember, it has to be enough — — foundation or essentially. I believe the court was in a position to make that call, just as this Court is. But it didn't. I mean, that isn't what the district court said. Right. The district court just said there isn't sufficient evidence here to make it a genuine dispute of material fact. Does the — for some reason, the briefs got all off on this signing question. Does that make any difference at all? Yeah, I think that is a bit of a red herring. Because the only — the only way that whether the — the court's point, observation — it made one observation that the tax returns were unsigned. The significance of that is that they weren't signed by Eleanor Plante. Right. Okay. And just as it went on to state the other two facts for — as a basis for why it rejected the statement against interest exception for hearsay was that it also couldn't be said that Newell could not say that Eleanor had provided the information. Why — and to get back to the tax returns, she was officially the CFO of this company. He did say that she had some input into this tax return. Why isn't that enough to support an inference for summary judgment purposes that what was said on the tax return was as her agent? Because on the basis of her allegation alone, her unsworn allegation, that isn't enough for a rational trial — I'm not talking about Deborah now. I'm talking about — I'm talking about Deborah, not Deborah. I'm not talking about Deborah. I'm talking about Eleanor. Why isn't — when — if she was officially the CFO of the company, and she did have input into this tax return, right? Well, according to Mr. Newell, she didn't really have any input into the preparation of the tax returns. No, he said she did. He said she — It's hard to say. I don't recall that she or Newell provided the ownership information. I don't recall them approving the — Well, the ownership information seemed to have been carried forward from year to year. Yeah, that's what he testified, Your Honor. He did say that. So whatever — I mean, what's very frustrating, to be frank, is — I mean, I — it's very likely that what's in the tax return is so. And the result is that there's not going to be any withdrawal liability because nobody remembers anything, but there's a piece of paper that seems to answer the question on — at least on behalf of the corporation, as to which these people at least had a controlling interest, even by their own story. And the question is, is there not enough to infer that he was operating both as the agent of the company and as their agent in putting together this tax return? You're right, Your Honor. The only document that Mr. Newell relied on was the capitalization summary. That says that the plants had 60 percent interest in Keno. Mr. Vargas had 30 percent. Because they had 60 percent, they at least had a controlling interest. I'm sorry, Your Honor? So they at least had a controlling interest. Yes, at least a controlling interest, but not the 80 percent requirement. And she at least was the chief financial officer of the company. And she at least had some input into this tax return. And yet we're going to ignore what the tax return says. Well, the question is, are the tax returns admissible? And that's —  And the question is whether, from those other facts, you can infer that he was acting as the agent for this closely held — very closely held corporation and for its owners. That's true, Your Honor. But the court decided that the — Well, it doesn't matter what the court decided. We're in summary judgment. Right. But it's an abuse of discretion review on whether — No, it's not an abuse of discretion. — on whether the tax returns were admissible. So without the tax returns, the court had to look at this record and say, you know, what do we have? We have the capitalization summary. It says they own 60 percent. We have Guth. It says they own 70 percent. We have Vargas, who said he owned 30 percent. And he wrote a sworn declaration to that effect and would testify that way at trial. If he owned 30 percent, then the plants could not own 80 percent. And yet — But to go back to this, is it an abuse of discretion standard for purposes of summary judgment where the question is whether this would lead to admissible evidence? It's the Frazier question again. And I don't know that that's an abuse of discretion standard. Well, but the pension plan never explained how the contents of the tax returns could ever be presented in an admissible form at trial. And indeed they couldn't, because Mr. Newell can't remember where he got the information or he can't testify from personal knowledge that the information in the tax return should be admissible at trial. He can't do that. And Eleanor and Noble are deceased. So unfortunately, Your Honor, no one can testify that the contents of the tax returns were true at trial. Mr. Newell can't, and Eleanor is gone. So that's where we are. We're left with Vargas and with Debra. Vargas says he owned 30 percent. Debra, according to the record — So the net result is that the corporation doesn't have assets. Is that true? I believe that's true, Your Honor. So the net result is that the pension plan is going to be out. How much money are we talking about? I believe the assessment now is over $2 million. Right, and they're still going to have to pay benefits to their beneficiaries without the $2 million. We're outside the record, Your Honor, because, of course, the pension plan has a judgment against Keno. Right, but it's unenforceable. Whether Keno has any assets, frankly, I don't know. I don't think the record actually tells us whether it does or not have assets. And so that's where we are. We have, you know, a record before you in which Debra makes an unsworn letter to the court where it says they had everything, but everything else in the record says she had 10 percent and Vargas had 30 percent and the plans had 60 percent. At the beginning, at the outset. Yes, but we don't have any information that that ever changed. Okay, Mr. Newell said he had no information that anyone had ever sold any stock. Well, except for the tax returns, which we have to just sort of pretend don't exist. They actually, for purposes of summary judgment, they don't exist because they're not admissible under the statement against interest exception to the RSA rule. Okay, you're out of time. Thank you, counsel. Let's hear a rebuttal. Thank you, Your Honor. Thank you, Your Honors. So just to address what the pension plan focused on with this appellate briefing was the ruling issued by the district court. But as Your Honors have correctly pointed out, this was a grant of summary judgment, that there were other pieces of evidence outside of the Keno aggregates tax returns, such as, as you pointed out, Debra Plante's statement. The ruling by the district court does not address any other evidence. Well, leaving aside that it's unsigned, if she gets up on the stand and says my parents own 100 percent, someone's going to ask, how do you know that? What's your foundation for saying that? Her foundation was that she was an officer and that there's the tax returns that the pension plan continues to argue that should be admissible, list her as an officer. So she, and they list her as having 10 percent. If her testimony is that her parents took away that 10 percent, even though they listed her as a 10 percent owner, that's still her testimony. Her testimony is they took away her 10 percent, but there's still this other guy. Mr. Vargas. I'm sorry, what? Are you talking about Mr. Vargas? No. Is that his name?  Yeah. Candelario Vargas. So, again, the capitalization form, I think, was from, I think, 2001, when Kino Agribus was first formed. There's that time span between 2001 and 2008. No one has any information on what happened. Again, we have a handwritten statement from someone who purports to be Candelario Vargas. We were never given any information regarding Mr. Vargas or his location so that we could try to depose him. So, as opposing counsel says, if we go to trial, yes, it will be Deborah Plant. It will be maybe Candelario Vargas. It may be John Guth, who's a separate attorney. That's all evidence that the court will have to take into consideration with or without the tax returns. Have you guys tried settling? We have tried settling, Your Honor. Is there any reason why it might be helpful to meet with our mediators? We had a mediation, a Ninth Circuit mediation, prior to the briefing. Unfortunately, it was unsuccessful. Okay. Well, thank you both sides for the helpful arguments. This case is submitted. Unless you have more. Sorry, you have 30 seconds left. Do you have anything else you wanted to say? I do not, Your Honor. Okay. This case is submitted then.
judges: BERZON, FRIEDLAND, MENDOZA